IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION NO. 16-6545 |
| | : | |
| v. | : | |
| | : | |
| JOSHUA MOSES | : | CRIMINAL ACTION NO. 14-232 |

## MEMORANDUM

**Padova, J.**                                                                                    **January 24, 2018**

Before the Court is Joshua Moses's *pro se* Motion to Vacate, Set Aside or Correct
Sentence pursuant to 28 U.S.C. § 2255. Moses asks that we vacate his conviction and sentence
for violation of 18 U.S.C. § 922(g)(1). For the following reasons, we deny the § 2255 Motion.[1]

## I.     BACKGROUND

On October 10, 2014, Moses was convicted by a jury of two counts of possession of a
firearm by a person who has been previously convicted in any court of a crime punishable by
imprisonment for more than one year, in violation of 18 U.S.C. § 922(g)(1). The first count
arose from Moses's possession of two firearms on November 21, 2013 and the second count
arose from Moses's possession of one firearm on November 22, 2013. Moses's trial counsel

---

[1] Moses has also filed a motion for the appointment of counsel to represent him in
connection with the instant § 2255 Motion. "There is no 'automatic' constitutional right to
counsel in a federal habeas corpus proceeding." Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir.
1991) (citations omitted), superseded on other grounds by 28 U.S.C. § 2254(d). However, we
may appoint counsel for a financially eligible person who is seeking relief under § 2255 if "the
interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); see also 28 U.S.C. § 2255(g).
Consequently, we may appoint counsel "where a *pro se* prisoner in a habeas action has made a
colorable claim, but lacks the means to adequately investigate, prepare, or present the claim."
Jones v. Bickell, Civ. A. No. 13-1008, 2014 WL 2547788, at *12 (E.D. Pa. June 6, 2014) (citing
Reese, 946 F.3d at 263-64). In making our determination, we consider "whether the claims
raised are frivolous, the complexity of the factual and legal issues, and if appointment of counsel
will benefit the petitioner and the court." Id. (citing Reese, 946 F.2d at 263–64). We have
considered these factors and conclude that Moses's claims are frivolous, the factual and legal
issues before us are not complex, and the appointment of counsel would not benefit Moses or the
court. Moses's request for appointment of counsel is, accordingly, denied.

(hereinafter referred to as "Trial Counsel") filed a post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on October 24, 2014. That motion was denied on November 3, 2014. On December 4, 2014, during a hearing held by the trial court, Moses requested new counsel. That request was granted and new counsel (hereinafter referred to as "Subsequent Counsel") was appointed to represent Moses in connection with his sentencing and appeal.

On January 2, 2015, before Moses was sentenced, the Government filed a Motion to Dismiss Count II on the ground that the evidence introduced at trial established that Moses simultaneously possessed all three firearms on November 21, 2013, which constituted a single offense under 18 U.S.C. § 922(g)(1). See United States v. Tann, 577 F.3d 533, 537-38 (3d Cir. 2009) (stating that "the allowable unit of prosecution under § 922(g) is the incident of possession, regardless of whether a defendant possessed more than one firearm, or possessed a firearm and ammunition" (citations omitted)). The Motion to Dismiss Count II was granted on January 9, 2015. Subsequent Counsel filed a Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33 on April 20, 2015, but that motion was denied. On May 12, 2015, Moses was sentenced for his conviction on Count I to 102 months of imprisonment, three years of supervised release, a $1000.00 fine, and a $100.00 special assessment. Moses appealed the order denying his Motion for New Trial and his sentence. The United States Court of Appeals for the Third Circuit denied his appeal in its entirety on June 21, 2016. See United States v. Moses, 653 F. App'x 91, 92 (3d Cir. 2016).

Moses subsequently filed the instant § 2255 Motion, in which he challenges the effectiveness of both of his attorneys and claims that the trial court committed errors in connection with this case. The § 2255 Motion asserts the following four grounds for relief: (1)

2

Trial Counsel's medical treatment prior to the trial caused him to render ineffective assistance to Moses; (2) Subsequent Counsel was ineffective for failing to assert a claim relating to Trial Counsel's ineffective assistance in Moses's Motion for New Trial; (3) the trial court failed to conduct a sufficient inquiry into Moses's conflict with Trial Counsel prior to appointing Subsequent Counsel; and (4) Trial Counsel rendered ineffective assistance at trial by failing to take certain actions that Moses believes were necessary for his defense.

## II.   LEGAL STANDARD

Moses has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "'Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors.'" United States v. Perkins, Crim. A. No. 03-303, Civ. A. No. 07-3371, 2008 WL 399336, at *1 (E.D. Pa. Feb. 14, 2008) (quoting United States v. Rishell, Crim. A. No. 97-294-1, Civ. A. No. 01-486, 2002 WL 4638, at *1 (E.D. Pa. Dec. 21, 2001)). In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see also United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) (stating that "relief under § 2255 is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded

3

by the writ . . . is apparent.'" (alterations in original) (quoting <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974))).

## III. DISCUSSION

### A. <u>Ground One</u>

In his first ground for relief, Moses argues that Trial Counsel rendered ineffective assistance because he was undergoing cancer treatment and taking prescription pain medication prior to Moses's trial. Specifically, Moses contends that Trial Counsel failed to prepare for trial or present a defense at trial because he underwent chemotherapy treatment prior to trial and took oxycontin during that treatment. In order to prevail on a claim for ineffective assistance of counsel, a criminal defendant must demonstrate both that (1) his attorney's performance was deficient, *i.e.*, that the performance was unreasonable under prevailing professional standards, and (2) that he was prejudiced by his attorney's performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88, 690-92 (1984). "We may address the prejudice prong first '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.'" <u>Travillion</u>, 759 F.3d at 289 (quoting <u>Strickland</u>, 466 U.S. at 697). Prejudice is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> Consequently, counsel cannot be found to be ineffective for failing to pursue a meritless claim. <u>See United States v. Bui</u>, 795 F.3d 363, 366-67 (3d Cir. 2015) ("'[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'" (quoting <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999))).

4

1.     Trial Counsel's medical treatment

The record before us shows that, on June 19, 2014, Trial Counsel filed a motion for continuance of trial, in which he requested a continuance of two to three months from the original trial date of July 10, 2014, because he had "recently been hospitalized due to an unexpected health problem." (Mot. to Continue ¶¶ 2-3.) The trial court held a Hearing on the Motion to Continue on June 27, 2014. Trial Counsel was unable to attend the Hearing and Moses was represented during the Hearing by another attorney from Trial Counsel's office. (6/27/14 Hr'g Tr. at 1, 3.) During the Hearing, the trial court explained to Moses that Trial Counsel was unwell and had requested a two or three month continuance of his trial. (Id. at 3.) The trial judge asked Moses whether he consented to the continuance of his trial and Moses stated that he did not object to the continuance and that he hoped that Trial Counsel would get better. (Id. at 4-5.) Trial Counsel later informed the court that he had taken oxycontin as part of his medical treatment before he returned to his practice, but that he had ceased taking such medication prior to Moses's trial. (12/4/14 Hr'g Tr. at 5.)

The use of prescription drugs during or prior to a trial does not render an attorney *per se* ineffective. As the United States Court of Appeals for the Third Circuit has explained, while "[a]lcohol or drug use by trial counsel can certainly be relevant to both parts of an ineffectiveness inquiry . . . alleged substance abuse is not, without more, one of the rare forms of dereliction amounting to the *per se* denial of a defendant's Sixth Amendment right to the effective assistance of counsel." United States v. Washington, 869 F.3d 193, 204 (3d Cir. 2017) (citations omitted). Thus, even though Trial Counsel admitted that he used oxycontin in the weeks prior to Moses's trial, "under Strickland the fact that an attorney used drugs is not, *in and of itself*, relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever

reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant." Berry v. King, 765 F.2d 451, 454 (5th Cir. 1985). See also Hundal v. Beard, Civ. A. No. 11-1571-JKS, 2013 WL 5493310, at *10 (E.D. Cal. Oct. 2, 2013) ("If the attorney's performance at trial did not fall below the standard of objective reasonableness, it is irrelevant whether the attorney . . . used narcotics during trial." (citing Bonin v. Calderon, 59 F.3d 815, 838 (9th Cir. 1995))). As the United States Court of Appeals for the Fourth Circuit has explained, "[m]any lawyers and judges are on various forms of medication while attending to their duties in the courtroom, but this is not the test. The [petitioner] must show that the medication affected his attorney in such a way that the attorney could not and did not render adequate legal assistance during the trial." McDougall v. Dixon, 921 F.2d 518, 535 (4th Cir. 1990). Thus, "even a drug-addicted attorney does not constitute an automatic violation of Strickland, nor does it create a presumption of ineffective assistance of counsel." Corbett v. Cate, Civ. A. No. 12–2070 PJH (PR), 2014 WL 231956, at *16 (N.D. Cal. Jan. 21, 2014) (citing Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987)). Consequently, we decline to find that Trial Counsel was ineffective simply because he took oxycontin while he was undergoing chemotherapy treatment prior to Moses's trial.

Moses also argues that, because his trial counsel had cancer, was undergoing chemotherapy, and was taking oxycontin, he was ineffective in that he failed to properly prepare for trial by (1) filing a motion to dismiss the multiplicitous indictment and (2) objecting to the introduction of the Government's audio and video evidence. We address these arguments in turn.

6

## 2. The multiplicitous indictment

Moses contends that Trial Counsel was ineffective in failing to move to dismiss Count II prior to trial. The Government moved to dismiss Count II on January 2, 2015, prior to Moses's sentencing, on the ground that the evidence admitted at trial established that Moses possessed all three firearms simultaneously on November 21, 2013 and, thus, was guilty of a single offense. "'A multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause.'" United States v. Credico, 646 F. App'x 248, 252 (3d Cir. 2016) (quoting United States v. Pollen, 978 F.2d 78, 83 (3d Cir. 1992)).

The United States Court of Appeals for the Third Circuit has held that "the allowable unit of prosecution under § 922(g) is the incident of possession, regardless of whether a defendant possessed more than one firearm . . . ." Tann, 577 F.3d at 537 (citations omitted). Thus, the simultaneous possession of multiple firearms constitutes only one violation of § 922(g). See United States v. Hauck, Crim. A. No. 11-130, 2011 WL 5117614, at *2 (M.D. Pa. Oct. 26, 2011) ("[S]imultaneous possession of multiple firearms or pieces of ammunition does not give rise to a separate offense for each firearm or piece of ammunition possessed." (citing Tann, 577 F.3d at 535; United States v. Marino, 682 F.2d 449 (3d Cir. 1982))).

Moses contends that Trial Counsel was ineffective for failing to move to dismiss Count II prior to trial because the muliplicitous indictment violated the Double Jeopardy Clause of the Fifth Amendment. However, "'[t]he interest protected by the Double Jeopardy Clause in this multiple punishment context is **confined** to ensuring that the total punishment [does] not exceed that authorized by the legislature.'" Credico, 646 F. App'x at 252-53 (quoting Pollen, 978 F.2d at 83). Thus, any double jeopardy issues that could result from multiplicitous convictions may

be resolved at sentencing. See United States v. Kennedy, 682 F.3d 244, 253 (3d Cir. 2012) (stating that "concerns over multiplicity may be addressed at sentencing" (citing Pollen, 978 F.2d at 83)); see also United States v. Blyden, 930 F.2d 323, 328 (3d Cir. 1991). Moreover, "'[w]hile the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [a defendant] for such multiple offenses in a single prosecution.'" United States v. Menendez, 137 F. Supp. 3d 709, 727 (D.N.J. 2015) (second alteration in original) (quoting Ohio v. Johnson, 467 U.S. 493, 500 (1984)). Consequently, dismissal of multiplicitous counts is unnecessary prior to trial, since "any question of double jeopardy will be rendered moot if the United States fails to convict on any or all of the purportedly multiplicitous counts." United States v. Greenspan, Crim. A. No. 16-114, 2016 WL 4402822, at *18 (D.N.J. Aug. 16, 2016) (citation omitted). Rather, "the appropriate curative response would be to merge [the multiplicitous counts] at the time of sentencing or to dismiss all but one of them prior to sentencing, as opposed to prior to trial." United States v. Felder, Crim. A. No. 06-079-01, 2007 WL 172368, at *1 (E.D. Pa. Jan. 11, 2007) (citing Blyden, 930 F.2d at 328)). In this case, the trial court dismissed the multiplicitous count prior to sentencing, thus eliminating any possible violation of the Double Jeopardy Clause.

Moses also argues that he was prejudiced by the multiplicitous indictment notwithstanding the trial court's dismissal of Count II prior to sentencing, because his advisory Sentencing Guidelines range was improperly calculated based on the possession of all three guns. Paragraph 18 of Moses's Presentence Investigation Report ("PSI") shows that the Probation Officer recommended that Moses's Base Offense Level be enhanced by two levels for the possession of three or more firearms pursuant to U.S.S.G. § 2K2.1(b)(1)(A). Paragraph 19 of

8

the PSI shows that the Probation Officer recommended an enhancement of four levels pursuant to U.S.S.G. § 2K2.1(b)(4)(B), because the Desert Eagle .50 caliber pistol (the gun referenced in Count II) had an obliterated serial number. Moses objected to these enhancements at his sentencing, on the grounds that he was prejudiced by the Court's reliance on evidence that was introduced in connection with the dismissed count. (5/12/15 Hr'g Tr. at 4, 6-11.) The District Court overruled the objection on the ground that the evidence introduced at trial related to the third firearm (the Desert Eagle) was relevant conduct to the possession of the two other firearms charged in Count I.[2] (Id. at 10-11.)

Moses raised this issue on appeal, arguing "that the [trial] Court should not have considered the Desert Eagle pistol in determining sentencing enhancements, because Count Two had been dismissed." Moses, 653 F. App'x at 94. The Third Circuit rejected this argument because "'conduct underlying dismissed counts . . . may be considered at sentencing.'" Id. (alteration in original) (quoting United States v. Baird, 109 F.3d 856, 863 (3d Cir. 1997)); see also Baird, 109 F.3d at 865 (explaining that, pursuant to U.S.S.G. § 1.1B3, "a sentencing court may . . . consider dismissed conduct if it is related to the charged conduct"); United States v. Kulick, 629 F.3d 165, 172 (3d Cir. 2010) ("To find relevant conduct, we require a strong showing of similarity . . . ."). Since the Third Circuit concluded that the trial court did not err by considering Moses's possession of the Desert Eagle pistol as relevant conduct in calculating Moses's advisory Guidelines sentencing range, we conclude that Moses was not prejudiced by

---

[2]Relevant conduct is addressed by § 1B1.3 of the Sentencing Guidelines, which states that the base offense level and specific offense characteristics for an offense are determined based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). The application notes explain that, under subsection (a)(1), "the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense." Id. n.1.

9

the multiplicitous indictment insofar as his advisory Guidelines sentencing range was calculated based on his possession of the firearm charged in the dismissed Count II as well as the firearms charged in Count I.

Moses further argues that he was prejudiced by Trial Counsel's failure to move to dismiss Count II prior to trial because being tried on two counts of violation of 18 U.S.C. § 922(g) led the jury to believe that he had engaged in more criminal activity than he actually had. However, there is no indication in the record "that the fact that [Defendant] was charged with two counts rather than one in any way influenced the jury against him." United States v. Stork, Crim. No. 10-132, Civ. No. 12-398, 2014 WL 1766955, at *5 (N.D. Ind. May 1, 2014). Moreover, evidence regarding Moses's possession of the Desert Eagle would have been admissible even if Count II had been dismissed prior to trial. While Federal Rule of Evidence 404(b) prohibits the admission of evidence of a crime other than the charged offense if that evidence is presented "to prove a person's character," intrinsic evidence is exempt from the application of Rule 404(b). United States v. Green, 617 F.3d 233, 244-45 (3d Cir. 2010). "[E]vidence is intrinsic if it 'directly proves' the charge offense." Id. at 249 (citations omitted). In addition, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." Id. (quotation omitted). Evidence that Moses possessed the Desert Eagle directly proves the charged offense of possession of a firearm by a convicted felon and was thus intrinsic evidence. Consequently, we conclude that the evidence regarding Moses's possession of the Desert Eagle would have been admissible even if Trial Counsel had moved to dismiss Count II prior to trial, and we conclude that the admission of this evidence did not prejudice Moses at trial.

Since we conclude that Moses was not prejudiced by his trial counsel's failure to move to dismiss Count II prior to trial, we further conclude that Moses's trial counsel was not ineffective for failing to file such a motion. See Strickland, 466 U.S. at 693-94.

### 3. The audio and video evidence

Moses claims that Trial Counsel was ineffective because he failed to challenge the admissibility of the Government's video and audio evidence prior to the trial. Moses argues both that Trial Counsel was ineffective in failing to challenge the admission of this evidence on authenticity grounds and that Trial Counsel should have moved to suppress this evidence because it was obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act (the "Omnibus Crime Control Act") and the Fourth Amendment. On June 13, 2014, the Government filed a pretrial motion to admit video and audio recordings of conversations that took place on November 21 and 22, 2013 between Moses, his accomplice Tyreese Lomax, and a Confidential Informant ("CI"), as well as an audio recording of a March 18, 2014 telephone conversation between Moses and Lomax.[3] In the Memorandum it filed in support of its Motion, the Government stated that one of the participants to the conversations it sought to introduce at trial was "available to testify as a witness, and [would] attest that the recordings are accurate reproductions of the conversations in which he participated." (Gov't's June 13, 2014 Mem. at 5.)

Federal Rule of Evidence 901 provides that "[t]o satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). At trial, the Government played the recording of a telephone conversation that took place on November 21, 2013 at

---

[3]Trial Counsel filed a response in opposition to this motion on August 14, 2014, but withdrew the response prior to trial.

approximately 12:30 p.m. (10/8/14 N.T. at 86.) There were two participants in the telephone conversation: Derrick Rhodes and Tyreese Lomax. (Id. at 68, 73, 87.) Before the telephone conversation was played for the jury, Rhodes testified regarding the recording, identified the voices on the recording, and further testified that the recording accurately reflected the telephone conversation that he had with Lomax on November 21, 2013 at approximately 12:30 p.m. (Id. 81-89.)

The Government also introduced into evidence a video and audio recording from November 21, 2013. Before that recording was played for the jury, Rhodes testified regarding the circumstances in which the recording was made and identified himself, an undercover ATF agent, Lomax, and Moses as the four individuals who participated in the recorded conversation. (Id. at 88-94.) The Government also introduced at trial a recorded telephone conversation between Rhodes and Lomax that occurred at 8:29 p.m. on November 21, 2013. (Id. at 112-13.) Prior to the introduction of that recording, Rhodes testified that the audio recording accurately reflected the telephone call he had on November 21, 2013. (Id. at 112.) The Government also introduced at trial a video and audio recording of a meeting between Rhodes and Lomax that took place on November 22, 2013. (10/9/14 N.T. at 5-6, 9-10.) Before that recording was admitted into evidence, Rhodes identified his voice and Lomax's voice on the recording and testified that the recording accurately reflected the actions that occurred on November 22, 2013. (Id. at 6-7.)

In addition, the Government introduced at trial a recording of a telephone call made by Lomax to Moses on March 18, 2014, at the request of an ATF agent. (Id. at 125-26.) Before that recording was admitted into evidence, Lomax testified regarding the circumstances of that

12

call, how he recorded the call, identified himself and Moses as participants in the call, and
verified that the recording accurately reflected what occurred on that day. (Id. at 125-27.)

We conclude that the testimony of the participants in the recorded conversations satisfied
the authenticity requirements of Rule 901(a). See United States v. Than Le, 542 F. App'x 108,
117 (3d Cir. 2013) (noting that one way of satisfying the authenticity requirement of Rule 901
"is to have a witness with knowledge testify 'that an item is what it is claimed to be'" (quoting
Fed. R. Evid. 901(b)(1))). Moreover, the Government's pretrial motion to admit these recordings
stated that:

> (a) The recording device used was capable of accurately recording the
> conversations; (b) The operator of the recording device was competent; (c) The
> video and audio recordings are authentic and correct; (d) There have been no
> changes in, additions to, or deletions from the video and audio recordings; (e) The
> video and audio recordings have been properly preserved; (f) The speakers on the
> audio recordings are properly identified; (g) The consenting party to the recording
> freely and voluntarily consented to the video and audio recording of the
> conversations; and (h) The transcripts of the audio recordings accurately represent
> the conversations on the audio recordings and accurately identify the speakers and
> parties to the audio recorded conversations.

(Gov't's Mot. ¶ 4.) Moses does not claim that any of these statements were untrue, or that any
of the recordings introduced into evidence at his trial was inaccurate, incorrect, or altered. "In
the absence of any such assertion, [Moses] is unable to establish that any effort of his counsel to
suppress the tape recordings would have been successful." Jimenez v. United States, Crim. No.
04-63, Civ. A. No. 08-0427, 2009 WL 1290031, at *3 (E.D. Pa. May 8, 2009). Consequently,
we conclude that if Moses's trial counsel had challenged the admission of these recordings prior
to trial on authentication grounds, the challenge would have been denied. Id.

Moreover, there is no violation of Title III of the Omnibus Crime Control Act and the
Fourth Amendment "where a party to the conversation has given consent prior to the recording."
United States v. West, 312 F. Supp. 2d 605, 616 (D. Del. 2004). Thus, "[w]here, as here, a law

13

enforcement officer or a government informant participates in a conversation and records a conversation without a warrant, courts have found no violation of Title III or the Fourth Amendment." Id. (citations omitted); see also United States v. Caple, Crim. No. 07-394, 2008 WL 5146556, at *8 (M.D. Pa. Dec. 8, 2008) (explaining that a defendant cannot challenge the introduction of a recording made by a confidential informant under the Omnibus Crime Control Act or the Fourth Amendment, if the recording was made with the consent of the confidential informant (citations omitted)). Rhodes testified at trial that he consented to the recordings of the conversations in which he participated on November 21 and 22, 2013, and Lomax testified that he consented to the recording of his telephone call with Moses on March 18, 2014. (10/8/14 N.T. at 79-80; 10/9/14 N.T. at 10-12, 125-26.) Therefore, even if Moses's trial counsel had challenged the admission of these recordings prior to trial based on Title III of the Omnibus Crime Act or the Fourth Amendment, such challenge would have been denied. See West, 312 F. Supp. 2d at 616. We conclude, accordingly, that Trial Counsel was not ineffective in connection with his failure to challenge the admission of these recordings prior to trial because counsel cannot be found to be ineffective for failing to pursue meritless claims. See Bui, 795 F.3d at 366-67 (stating that "'there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." (quoting Sanders, 165 F.3d at 253).

As we have determined that Trial Counsel was not ineffective because he underwent medical treatment, including the use of prescription painkillers, prior to Moses's trial; that Trial Counsel was not ineffective for failing to move to dismiss Count II of the Indictment prior to trial; and that Trial Counsel was not ineffective for failing to object to the admission of the Government's video and audio recordings prior to trial, we deny the instant Motion with respect to Moses's first ground for relief.

14

### B. Ground Two

In his second ground for relief, Moses argues that Subsequent Counsel was ineffective in failing to include claims relating to Trial Counsel's ineffectiveness in his April 20, 2015 Motion for New Trial. Moses contends that Subsequent Counsel should have raised claims related to Trial Counsel's ineffectiveness based on Trial Counsel's use of oxycontin, failure to prepare adequately for trial, and failure to communicate with Moses prior to trial. However, the Third Circuit has instructed that, "rarely, if ever, should an ineffectiveness of counsel claim be decided in a motion for a new trial or on direct appeal[;]" instead, "'ineffective assistance of trial counsel claims [should] be brought as collateral challenges under 28 U.S.C. § 2255.'" United States v. Kennedy, 354 F. App'x 632, 637 (3d Cir. 2009) (quoting United States v. Chorin, 322 F.3d 274, 282 n.4 (3d Cir. 2003)); see also United States v. LeRoy, Crim. No. 16-243, 2017 WL 2938199, at *3 (W.D. Pa. July 10, 2017) (declining to consider defendant's arguments that his trial counsel was ineffective in the context of a Rule 33 motion for new trial because "the Third Circuit has expressed an unmistakable preference that ineffective assistance of trial counsel claims be brought as collateral challenges under 28 U.S.C. § 2255, not as a Rule 33 motion for new trial or on direct appeal" (citing Kennedy, 354 F. App'x at 637, and United States v. Garcia, 516 F. App'x 149, 151-52 (3d Cir. 2013))); United States v. McKnight, Crim. No. 10-121-1, 2012 WL 12871825, at *1 n.1 (denying Rule 33 motion for a new trial to the extent defendant argues that his counsel was ineffective because "such claims should rarely be decided in a motion for a new trial; rather, the Third Circuit has expressed a preference that such claims be brought pursuant to 28 U.S.C. § 2255) (citing Kennedy, 354 F. App'x at 637)).

Moses has submitted a copy of an extensive memorandum sent to him by Subsequent Counsel that analyzes the Third Circuit's preference that claims of ineffective assistance of trial

15

counsel be brought pursuant to § 2255. (Moses Ex. T.) We find that this memorandum is evidence that Subsequent Counsel's decision not to raise claims of ineffective assistance of trial counsel in the Motion for New Trial was part of a considered strategy. When we consider whether an attorney's performance was deficient, we are required "'to be "highly deferential" to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight.'" Frazier v. Sec'y Pennsylvania Dep't of Corr., 663 F. App'x 211, 214 (3d Cir. 2016) (quoting Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002)). Under these circumstances, and in light of the Third Circuit's strong preference that claims of ineffective assistance of counsel be brought pursuant to 28 U.S.C. § 2255 rather than in a motion for new trial, we conclude that Moses has failed to establish that Subsequent Counsel's decision not to assert ineffective assistance of counsel claims in the April 20, 2015 Motion for New Trial "'fell below an objective standard of reasonableness under prevailing professional norms.'" Id. at 214 (quoting Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999)). We further conclude, accordingly, that Moses has not shown that Subsequent Counsel was ineffective in this regard. We therefore deny the instant Motion with respect to Moses's second ground for relief.

## C.     Ground Three

In his third ground for relief, Moses contends that the trial court erred by failing to sufficiently inquire into the reasons why he wanted new counsel prior to granting his request. Moses was originally scheduled to be sentenced on January 12, 2015. In November 2014, he sent a letter to the trial court, asking that Trial Counsel be discharged due to irreconcilable differences and a conflict of interest and asking that new counsel be appointed to represent him. (12/4/14 Hr'g Tr. at 3.) On December 4, 2014, the trial court held a hearing and granted the request. (Id. at 7.) Moses asserts that the trial court erred by granting his request for new

16

counsel without adequately inquiring into all of the conflicts Moses addressed in his letter. Moses does not contend that the trial court's dismissal of Trial Counsel and appointment of Subsequent Counsel was in error, only that the trial court should have conducted a more extensive inquiry into his complaints about his attorney before granting his request. Moses cites no authority for the proposition that he is entitled to relief because the trial court failed to hold a sufficiently extensive hearing into his claims before granting his request and we are aware of none. Moses has also failed to assert that he was in any way prejudiced by the trial court's failure to inquire as to all of the reasons for his request prior to granting that request. Consequently, we deny the instant Motion as to Moses's third ground for relief.

### D. Ground Four

In his Fourth Ground for relief, Moses raises several additional claims of ineffective assistance of Trial Counsel. Specifically, Moses asserts that Trial Counsel failed to adequately communicate with him and prepare his defenses as follows: (1) Trial Counsel did not call as a defense witness an individual whom Lomax had threatened with a gun, even though Lomax had been arrested in connection with this incident; (2) Trial Counsel failed to obtain information regarding whether Rhodes had court permission to work as a confidential informant for the ATF in accordance with his conditions of supervised release; (3) Trial Counsel failed to object to the admission of certain photographs at trial; (4) Trial Counsel failed to adequately prepare Moses to testify in his own defense at trial; (5) Trial Counsel was ineffective in connection with advice he gave Moses with respect to the maximum sentence Moses faced; and (6) Trial Counsel was

17

ineffective in connection with a criminal proceeding in state court.[4] We address these claims in turn.

## 1. Failure to call a defense witness

Moses claims that Trial Counsel was ineffective for failing to call Shekiel Clark as a trial witness. He contends that Clark would have testified that Lomax threatened her, her sisters and her mother with a gun and that Lomax was arrested in connection with that incident on November 23, 2013. Moses has supplied his email exchange with Trial Counsel regarding this witness, in which Trial Counsel states that he has investigated this incident and could not find an arrest report showing that Lomax was arrested in connection with this incident. (Moses Ex. H.)

As we discussed above, "[t]o show that counsel was ineffective, a petitioner must show that his or her attorney's performance was deficient and that the deficiency prejudiced the defense." United States v. Jones, Crim. No. 09-137-1, Civ. A. No. 12-1956, 2014 WL 1386328, at *2 (E.D. Pa. Apr. 8, 2014) (citing Strickland, 466 U.S. at 687, and Missouri v. Frye, 566 U.S. 134, 140 (2012)). Thus, Moses must show that Trial Counsel's actions "'fell below an objective standard of reasonableness under prevailing professional norms.'" Frazier, 663 F. App'x at 214 (quoting Buehl, 166 F.3d at 169). When we conduct our inquiry, we are required "'to be "highly deferential" to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight.'" Id. (quoting Marshall, 307 F.3d at 85).

"Decisions regarding which witnesses to call are 'precisely the type of strategic decision[s] which the Court in Strickland held to be protected from second-guessing.'" United

---

[4] Moses also reiterates in Ground Four his claims in Ground One that Trial Counsel was ineffective for failing to object to the multiplicitous indictment and failing to move to preclude the Government's use of video evidence at trial. As we have already determined that Moses has not established that Trial Counsel was ineffective with respect to these claims, we do not address them again in connection with his fourth ground for relief.

18

States v. Brown, Crim. No. 09-602-3, 2015 WL 4610897, at *7 (E.D. Pa. July 31, 2015) (alteration in original) (quoting United States v. Merlino, 2 F. Supp. 2d 647, 662 (E.D. Pa. 1997)). Indeed, "[a]ttorneys are not required to call every witness suggested to them; their expertise leads them to choose only the witnesses likely to assist the case." Merlino, 2 F. Supp. 2d at 662 (citing United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990), and United States v. Griffin, Crim. No. 91-612, 1993 WL 34927 (E.D. Pa. Feb. 9, 1993), aff'd 16 F.3d 406 (3d Cir. 1993)). In this case, it is highly questionable that Clark would have been permitted to testify regarding a crime allegedly committed by Lomax, when Lomax had not been arrested for, let alone convicted of, that crime. See Fed. R. Evid. 404, 608(b), 609. Consequently, we cannot conclude that Trial Counsel's failure to call Ms. Clark as a witness at Moses's trial was not a reasonable strategic decision. Moreover, Moses himself testified at trial about that incident on direct examination, without objection by the Government. Moses told the jury that Lomax "had a situation with my kids' mother and her sisters where he -- you know, he lashed out with the same gun that they have in the bag and he pulled it out on her, told her he was going to shoot up her house or something like that when he was arguing with her mom." (10/9/14 N.T. at 238.) Accordingly, we conclude that Moses has not established that Trial Counsel's decision not to call Clark as a trial witness was constitutionally deficient or that he was prejudiced by such decision, since he personally testified regarding the incident.

    2.    The Confidential Informant

Moses argues that Trial Counsel was ineffective for failing to obtain information regarding whether the CI, Derrick Rhodes, had a judge's permission to act as an informant for the ATF since he was on supervised release in November 2013. Moses, however, has not established how he may have been prejudiced by this alleged failure. In fact, Rhodes testified at

19

Moses's trial that he had a criminal record, including a federal firearms conviction, and that he was on federal supervised release from November 2013 through the time of trial. (10/8/14 N.T. at 70-73; 10/9/14 N.T. at 20-21.) In addition, both Rhodes and an ATF agent testified that Rhodes was paid $56,800 by the ATF for his cooperation beginning in 2012 and continuing through Moses's trial, and that the amount included $600 for Rhodes's actions on behalf of the ATF on November 21 and 22, 2013. (10/9/14 N.T. at 18-20, 217-18.) The jury was therefore fully informed of the fact that Rhodes was on supervised release while working as a CI, and Moses does not explain how an inquiry into the permission Rhodes received from a judge to act as a CI could have revealed information that was relevant to his (Moses's) defense. Under these circumstances, we conclude that Moses has not established that he was prejudiced by Trial Counsel's failure to obtain information regarding whether Rhodes had a judge's permission to act as an informant for the ATF in November 2013.

### 3. Failure to object to the admission of photographs at trial

Moses argues that Trial Counsel was ineffective for failing to object to the introduction of certain photographs at trial. Specifically, Moses claims that Trial Counsel should have objected to four photographs that were admitted into evidence at trial as Government Exhibits 1-4. Rhodes testified that Government Exhibit 1 is a photograph of two firearms that Lomax sent to him via text message. (10/8/14 N.T. at 75-76.) Rhodes testified that Lomax sought to sell the guns and pointed out that the picture showed the price of the two guns to be $1,600.00. (Id. at 76.) Rhodes also identified the first page of Government Exhibit 2 as a text message sent to him by Lomax, which stated "$1,200 for the Eagle," and identified the second page of that text as an attached photograph of the Desert Eagle firearm. (Id. at 109-11.) Rhodes further testified that Government Exhibit 3 was a still photograph taken from the Government's November 21, 2013

video recording. (Id. at 96.) Rhodes identified the person depicted in Government Exhibit 3 as Moses, who was pictured seated in the driver's seat of a Cadillac. (Id. at 96-97.) Rhodes also testified that Government Exhibit 4 was a photograph taken on November 22, 2013, in which Lomax was pictured with the firearm that he sold to Rhodes that same day. (10/9/14 N.T. at 12-13.) In addition, Lomax testified that he took the photograph in Government Exhibit 1 and sent that photograph to Rhodes. (10/9/14 N.T. at 77-79.) Lomax also identified Government Exhibit 2 as being a text that he sent to Rhodes with a picture of the Desert Eagle, and he described the circumstances under which that picture was taken. (Id. at 109-110.) Lomax further identified himself in the picture admitted into evidence as Government Exhibit 4 and explained that the photograph depicted him "pulling the [Desert Eagle] out of my pants." (Id. at 118.)

As we stated earlier, Rule 901 of the Federal Rules of Evidence requires that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "The 'burden of proof for authentication is slight. All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be.'" United States v. Gorny, Crim. No. 13-70, 2014 WL 4262178, at *7 (W.D. Pa. Aug. 27, 2014) (quoting United States v. Mebrtatu, 543 F. App'x 137, 140 (3d Cir. 2013)). We conclude that the evidence of record was sufficient to authenticate Government Exhibits 1-4. We further conclude, accordingly, that Trial Counsel was not ineffective in connection with his failure to challenge the admission of these photographs on authentication grounds at trial because counsel cannot be found to be ineffective for failing to pursue meritless claims. See Bui, 795 F.3d at 366-67 (quoting Sanders, 165 F.3d at 253).

21

### 4. Failure to adequately prepare Moses to testify

Moses claims that Trial Counsel was ineffective in failing to adequately prepare him to testify in his own defense at trial. Moses asserts that Trial Counsel only spent fifteen minutes preparing him to testify immediately before he (Moses) took the stand at trial. Moses does not, however, elaborate on this claim in any way. Moses also does not assert that his testimony would have been different if Trial Counsel had spent more time preparing him to testify at trial. There is also no evidence on the record before us to show that devoting more time to Moses's preparation would have changed the outcome of Moses's trial. See Strickland, 466 U.S. at 694 (stating that proof of prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Under these circumstances, we conclude that Moses has not established that Trial Counsel's performance was deficient or that he was prejudiced by Trial Counsel's performance. See Strickland, 466 U.S. at 687–88, 690-92, 694.

### 5. Incorrect legal advice

Moses further argues that Trial Counsel was ineffective in giving him incorrect advice regarding the maximum penalty he faced for the charges brought against him in Counts I and II of the Indictment. The Indictment charged Moses with two counts of possession of a firearm by a person who has been previously convicted in any court of a crime punishable by imprisonment for more than one year, in violation of 18 U.S.C. § 922(g)(1). The maximum sentence for each of Counts I and II is ten years of imprisonment. See 18 U.S.C. § 924(a)(2). Moses states that he was told at his pre-trial detention hearing that the maximum sentence that he faced was twenty years' imprisonment, but Trial Counsel incorrectly told him that he faced a maximum penalty of ten years' imprisonment. Moses has submitted copies of emails sent to him by Trial Counsel

22

regarding this issue. In these emails, Trial Counsel correctly informed Moses that the statutory maximum sentence that he faced for each of Counts I and II was ten years, but also incorrectly stated that, because the Counts would be grouped when his advisory Guidelines sentencing range was calculated, the maximum sentence he faced was 120 months of imprisonment. (See Moses Ex. F.) We conclude that the legal advice that Trial Counsel gave Moses with respect to the maximum sentence he faced "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also Baker v. Barbo, 177 F.3d 149, 152, 154 (3d Cir. 1999) (holding that a trial attorney's error in advising defendant that "the maximum sentence he faced was 30 years with 15 years of parole ineligibility" when he actually faced a mandatory minimum of 25 years of imprisonment satisfied the first prong of the Strickland test (citing Strickland, 466 U.S. at 688, 690)); Holcomb v. United States, Crim. No. 07-400, Civ. No. 12-29, 2014 WL 896796, at *9 (W.D. Pa. Mar. 6, 2014) (holding that trial counsel's belief that defendant faced a maximum sentence of 120 months when his maximum sentence was actually 240 months "demonstrate[d] attorney conduct that falls below an objective standard of reasonableness" (citing Baker, 177 F.3d at 154; and Riggs v. Fairman, 399 F.3d 1179 (9th Cir. 2005))).

Moses, however, has failed to establish the second prong of the Strickland test, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As we previously noted, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Moses does not assert, and there is no evidence on the record before us that would support such an assertion, that he would not have gone to trial if he had received correct advice from Trial Counsel regarding the maximum sentence that he faced or that he would have received a shorter sentence if he had pled guilty, rather than gone to trial. Accordingly, we conclude that

23

Moses has not satisfied the second prong of the <u>Strickland</u> test because he has not shown that he was prejudiced by Trial Counsel's unprofessional error.

### 6. The state case

Moses also claims that Trial Counsel was ineffective in his representation of Moses in a state court prosecution. Moses asserts that Trial Counsel withdrew from representing Moses "on 12/8/14, the day of trial in the state matter, counsel was paid for trial and, where petitioner was taken to Philadelphia county courthouse, by Philadelphia sheriff's office on 12/8/14 from the Federal Detention Center, and being returned same day without having trial, thereby, violating Article IV(e)'s anti-shuttling provision." (§2255 Mot. ¶ 13.) This claim pertains entirely to counsel's representation of Moses in a separate state court matter and does not appear to have any relationship to Moses's federal court conviction and sentence. Section 2255 does not provide an avenue for attacking the validity of a state court conviction or sentence. <u>See</u> 28 U.S.C. § 2255(a). Consequently, we may not consider Moses's challenge to the effectiveness of his attorney's representation of him in a state court matter in the context of Moses's § 2255 Motion.

For the reasons stated above, we conclude that Moses has not established that Trial Counsel's actions "fell below an objective standard of reasonableness under prevailing professional norms," <u>Frazier</u>, 663 F. App'x at 214 (quotation omitted), in connection with: (1) his failure to call Shekiel Clark as a trial witness; (2) his failure to obtain information regarding whether Rhodes had court permission to act as a confidential informant; (3) his failure to object to the admission of certain photographs at trial; and (4) his failure to spend more than 15 minutes preparing Moses to testify in his own defense at trial. We further conclude that Moses has not established that he was prejudiced by Trial Counsel's actions in: (1) failing to call Shekiel Clark

24

as a trial witness; (2) failing to obtain information regarding whether Rhodes had court permission to act as a CI; (3) failing to spend more than 15 minutes preparing Moses to testify; and (4) incorrectly advising Moses as to the maximum sentence he faced if convicted of both Counts I and II of the Indictment. Consequently, we conclude that Moses has failed to establish that Trial Counsel was constitutionally ineffective with respect to any of the first five actions addressed by Moses in Ground 4 and we deny the instant Motion as to these portions of Moses's Fourth Ground for relief. In addition, we also deny Moses's Fourth Ground for relief with respect to his claim that Trial Counsel was ineffective in connection with a criminal proceeding in state court because we cannot consider Trial Counsel's conduct in a state court proceeding in the context of a motion for relief brought pursuant to § 2255.

## IV.   CONCLUSION

For the reasons stated above, we deny Moses's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 in its entirety. An appropriate order follows.

BY THE COURT:

_____
John R. Padova, J.