IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOSHUA MOSES | : | NO. 14-232 |

**MEMORANDUM**

**Padova, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　August 31, 2020

Defendant Joshua Moses has filed the instant "Emergency Motion Seeking Compassionate Release/Reduction In Sentence and to Waive the Exhaustion Requirement Due to the COVID-19 Pandemic" pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that the court should reduce his sentence to time served and release him from the Federal Correctional Institution, Fort Dix ("FCI Fort Dix") because of the COVID-19 pandemic and his medical conditions. The Government opposes the Motion on the ground that Moses has not demonstrated the extraordinary and compelling circumstances necessary to obtain relief under § 3582(c)(1)(A).[1] For the following reasons, we deny the Motion.

**I.　BACKGROUND**

　　A.　Moses's Sentence

On October 10, 2014, Moses was convicted by a jury of two counts of possession of a firearm by a person who has been previously convicted in any court of a crime punishable by imprisonment for more than one year, in violation of 18 U.S.C. § 922(g)(1). The first count arose

---

[1] The Government concedes that Moses has exhausted his administrative remedies since more than 30 days have elapsed since the Warden received Moses's most recent request for compassionate release dated April 3, 2020. (See Gov't Resp. at 7.) Consequently, we need not waive the exhaustion requirement, since that requirement has been satisfied. See 18 U.S.C. § 3582(c)(1)(A).

from Moses's possession of two firearms on November 21, 2013, and the second count arose from Moses's possession of one firearm on November 22, 2013.  On January 9, 2015, before Moses was sentenced, the Court granted the Government's Motion to Dismiss Count II.  On May 12, 2015, Moses was sentenced for his conviction on Count I to 102 months of imprisonment, three years of supervised release, a $1000.00 fine, and a $100.00 special assessment.  Moses appealed and the United States Court of Appeals for the Third Circuit denied his appeal on June 21, 2016.  See United States v. Moses, 653 F. App'x 91, 92 (3d Cir. 2016).  Moses is eligible for home detention on February 10, 2021 and his anticipated release date is August 10, 2021.[2]  (Reply Br., Ex. 1 at 23 of 101.)

    B.    FCI Fort Dix

Moses is presently serving his sentence at FCI Fort Dix, "the largest federal prison in the United States in terms of capacity, capable of housing up to 5,000 inmates, but [as of May 2020] housing approximately 2,900 inmates." Wragg v. Ortiz, Civ. A. No. 20-5496, 2020 WL 2745247, at *2 (D.N.J. May 27, 2020) (citation omitted).  FCI Fort Dix "is a low security facility."  Id. (quotation omitted).  At this time, there are no inmates that are infected with COVID-19.  See https://www.bop.gov/coronavirus, last viewed August 18, 2020.  Thirty-nine inmates and six staff members have recovered from COVID-19.  Id.  In Wragg, the district court dismissed a class action suit brought by inmates at FCI Fort Dix who sought to be released from that facility because of the risk of being infected with COVID-19.  Wragg, 2020 WL 2745247, at *1-2.  In reaching its decision, the district court noted that FCI Fort Dix is taking the following steps to limit infections.

---

[2] We note, however, that Moses's home confinement and release dates may be affected by a detainer placed on him by the Commonwealth of Pennsylvania because he has been sentenced in state court to a term of 6-23 years imprisonment to be served consecutively to his current federal sentence.  (Reply Br., Ex. 1 at 22 of 101.)

2

"When inmates are newly admitted to FCI Fort Dix, they are screened for COVID-19 exposure risk factors and symptoms." Id. at *3 (citation omitted). "Asymptomatic inmates with risk of exposure are placed in quarantine." Id. (quotation omitted). "Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation." Id. (quotation omitted). The staff at FCI Fort Dix are also "subjected to enhanced health screening." Id. (citation omitted). In addition, visits to the facility are limited to contractors performing essential services and lawyers, who are permitted entry on a case-by-case basis, and all outside visitors are subjected to health screening before they are admitted to FCI Fort Dix. Id. (citations omitted). Moreover, "staff and orderlies regularly and comprehensively clean all facilities at FCI Fort Dix" using cleaning and disinfecting protocols that meet or exceed guidance from the Bureau of Prisons ("BOP") and the Centers for Disease Control ("CDC"). Id. at *4 (citations omitted). In addition, mask wearing is mandatory for all inmates and staff members, who have been issued reusable cloth masks. Id. at *5 (citations omitted).

    C.    <u>Moses's Medical Conditions</u>

Moses was shot several times on August 9, 2009. (Reply Br. at 5.) He states, in his Reply Brief, that he suffered injuries to his lungs, kidneys, liver, chest, stomach, buttocks, and knees. (Id.) Over the next year, he underwent several surgeries, including two small bowel resections. (Id.) Moses currently has only 15% of his small intestine. (Id.) Moses claims that he suffers from short bowel syndrome, hypertension, scars on both lungs from being shot, a previous tracheostomy and the placement of tubes in both lungs in 2009, and pre-diabetes. (Mot. at 9 of 13.) According to Moses's recent medical records from the BOP, he is 39 years old and has been diagnosed with short bowel syndrome, diarrhea, inflammatory bowel disease, esophageal reflux, pain in his limb extremity, anemia, dizziness, giddiness, otitis media, benign essential hypertension, Vitamin B

deficiency, Vitamin D deficiency, and pre-diabetes. (Gov't Ex. C at 1-2, 14, 21, 26, 70.) He currently takes medication for his otitis media, esophageal reflux, limb extremity pain, unspecified joint pain, and Vitamin D deficiency. (Id. at 3.) His medical records from the BOP do not mention scars on his lungs. (See Gov't Ex. C.) Those records do show that he had a tracheostomy and bilateral chest tube placement in 2009 and that he had no problems after his surgery. (Id. at 21; see also Moses's "Pro Se Replication" (Docket No. 137), Ex. 5 at 107 of 114.) Moses has submitted medical records from August 15, 2019 and October 31, 2019, which show that he had bilateral basilar atelectasis in his lung bases. (Reply Br. Exs. 4-5.) Moses's most recent medical records from the BOP show that he had no respiratory symptoms as of July 6, 2020 and that his lungs were clear to auscultation. (Pro Se Replication Ex. 5 at 101 of 114.) Moses also asserts that he suffers from issues with his kidneys; however, he had an ultrasound in January 2019 that showed that his kidneys were normal. (Reply Br. Ex. 7 at 55 of 101, 60 of 101.) Moses also claims to have a BMI of 30, but his July 6, 2020 medical records show that his height was 70 inches, his weight was 199 pounds, and his BMI is between 28 and 28.9.[3] (Pro Se Replication Ex. 5 at 99 of 114, 107 of 114.) Using the BMI calculator provided by the National Institutes of Health National Heart, Lung, and Blood Institute, Moses's BMI is 28.6. See https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last viewed August 31, 2020).

---

[3] Moses notes in his Pro Se Replication that some of his medical records from the BOP dated prior to July 6, 2020, state that his height is 72 inches, which would result in an even lower BMI. Moses is correct that his BOP medical records record his height as 72 inches on August 30, 2019 and May 18, 2020. (Gov't Ex. C at 1, 33.) Those medical records also record his height as 70 inches on August 2, 2019, October 31, 2019, and November 6, 2019. (Id. at 22, 15, 42.) This inconsistency is not explained. Consequently, we rely on the height of 70 inches provide for Moses in his most recent BOP medical records dated July 6, 2020. (See Pro Se Replication Ex. 5 at 99 of 114.)

## II.     LEGAL STANDARD

As a general rule, a district court may not modify a defendant's sentence after it has been imposed. 18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 825 (2010). However, the First Step Act provides for a compassionate release exception to that general rule, stating that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction;
>
> * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1); see also U.S.S.G. § 1B1.13 (stating that the court may reduce a term of imprisonment if it finds, after consideration of the factors in § 3553(a), that "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is not a danger to the safety of any other person or to the community," and "[t]he reduction is consistent with this policy statement"). Although neither U.S.S.G. § 1B1.13 nor Congress defines the term "extraordinary and compelling," the Sentencing Commission's commentary to § 1B1.13, provide guidance. See U.S.S.G. § 1B1.13 cmt. n.1. The commentary provides that "extraordinary and compelling reasons" can include the following: (1) certain specified serious medical conditions (a terminal illness or a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care" in prison and "from which he or she is not expected to recover"); (2) the

5

defendant's advancing age (over 65), in combination with a serious deterioration of his health and his successful completion of at least 10 years or 75% of his sentence; (3) the defendant's family circumstances, and (4) "[o]ther [r]easons . . . [a]s determined by the Director of the Bureau of Prisons" to be extraordinary and compelling, either alone or in combination with the three prior reasons. U.S.S.G. § 1B1.13, cmt. n.1.

In <u>United States v. Raia</u>, 954 F.3d 594 (3d Cir. 2020), Third Circuit considered a compassionate release petition based on the existence of COVID-19 and stated that it:

> [does] not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for [older inmates with pre-existing conditions].  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.

Id. at 597 (citation omitted).  Likewise, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit." <u>United States v. Roeder</u>, 807 F. App'x 157, 161 n.16 (3d Cir. Apr. 1, 2020).

### III.  DISCUSSION

Moses argues in his Motion that he is entitled to release under 18 U.S.C. § 3582(c)(1)(A)(i) due to the risk that he could contract COVID-19 at FCI Fort Dix and his serious medical conditions.  Specifically, he argues that there is a substantial chance that he could contract a serious COVID-19 infection at FCI Fort Dix because his medical conditions leave him especially vulnerable to severe complications from a COVID-19 infection, the prison isn't properly cleaned, and prisoners and staff do not comply with the BOP's mask wearing mandates.  Moses asserts that his medical conditions, particularly his bilateral basilar atelectasis, BMI, hypertension, pre-diabetes, and kidney issues, put him at an increased risk of severe complications if he were to contract COVID-

19 while he is incarcerated at FCI Fort Dix. We note that, as we discussed above, Moses's medical records do not support his contentions that he presently suffers from any pulmonary issues[4], has a BMI of 30, or that he has kidney issues. Moreover, Moses's current medical records show that his hypertension has been in remission since February 9, 2017, he has not been prescribed any medication for hypertension and his blood pressure has largely been within normal limits. (See Gov't Ex. C at 1, 70, 270.) Furthermore, the CDC does not recognize pre-diabetes as a risk factor for serious illness from COVID-19. In fact, while the CDC states that individuals with Type 2 diabetes mellitus are at an increased risk of serious illness from COVID-19, it does not list pre-diabetes as a risk factor for serious illness. See https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/groups-at-higher-risk.html (last viewed August 19, 2020). Therefore, we conclude, based on Moses's medical records, that Moses does not have any medical conditions that place him at an increased risk of serious illness from COVID-19.

Moses relies on several cases in which individuals who were incarcerated at FCI Fort Dix have been granted compassionate release over the last several months because they were found to be at increased risk for serious illness from COVID-19. The defendant in United States v. Pena, Crim. No. 15-551, 2020 WL 2301199 (S.D.N.Y. May 8, 2020), suffers from hypertension, which the CDC has recognized "increases the likelihood of serious risk from COVID-19." Id. at *4 (citation omitted). The defendant in United States v. Al-Jumail, Crim. No. 12-20272, 2020 WL 2395224 (E.D. Mich. May 12, 2020), is over 60 years old and suffers from coronary arterial disease and diabetes, all factors which place him at higher risk for suffering severe illness from COVID-10. See id. at *4, *6 (citations omitted). The defendant in United States v. Cooper, Crim. No. 13-

---

[4] While there is no record evidence that Moses still suffers from bilateral basilar atelectasis, we also note that the CDC does not recognize bilateral basilar atelectasis as posing an increased risk for serious illness from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/groups-at-higher-risk.html (last viewed August 19, 2020).

66, 2020 WL 4195273 (S.D.N.Y. June 11, 2020), suffers from "health conditions that present challenges for self-care," including asthma, for which he uses an inhaler, a condition which "significantly increase[s] the risk that, if [he] contracts COVID-19, he may face serious illness and potentially death." Id. at *2.  Thus, Moses's reliance on these cases is misplaced because the inmates who brought these motions for compassionate release, unlike Moses, all had medical conditions that placed them at increased risk for serious illness from COVID-19.

Moses has also submitted two sworn Affidavits describing poor conditions and inconsistent face mask use at FCI Fort Dix.  Specifically, these Affidavits, submitted by Moses and by another inmate, describe mold and leaking pipes in the showers at FCI Fort Dix, long wait times to see a doctor, and inconsistent mask wearing by inmates and correctional officers.  (See Reply Br. Ex. A.)  While we don't question the veracity of the Affidavits, we must balance this evidence against evidence that there are no current COVID-19 infections among inmates at FCI Fort Dix and that "staff and orderlies regularly and comprehensively clean all facilities at FCI Fort Dix" using cleaning and disinfecting protocols that "meet or exceed guidance from BOP and the CDC." Wragg, 2020 WL 2745247, at *4 (citations omitted).  Moreover, as described in the following opinions, there have been no COVID-19 infections among inmates at FCI Fort Dix Low,[5] where Moses is held, and there have been no new COVID-19 infections among inmates held anywhere at FCI Fort Dix since May 6, 2020, more than three months ago.  Indeed, as other courts have recognized, the current conditions at FCI Fort Dix do not put prisoners "at imminent risk of being exposed to or contracting the COVID-19 virus." United States v. Culbreth, Crim. No. 14-235, 2020 WL 4504393, at *4 (M.D. Pa. Aug. 5, 2020) (considering evidence that "the BOP reports no positive prisoners or staff members at FCI Fort Dix, and 39 prisoners and 5 staff members have

---

[5] We note that the Government states in its Rejoinder to Moses's Reply Brief that Moses is an inmate in the FCI Fort Dix Low facility. (Gov't Rejoinder at 13-14.)

8

recovered after previously testing positive" (citation omitted)). The defendant in Culbreth had been diagnosed with "Type 2 diabetes mellitus, polyneuropathy, obesity, and hypertension, for which he takes various medications," and which put him in a higher risk group for a severe COVID-19 infection. Id. Nonetheless, the Culbreth court denied the defendant's motion for compassionate release because his "medical conditions, while significant, are manageable in a prison setting" and because "it does not appear that there is a strong likelihood that [the defendant] will contract the COVID-19 virus in his facility, and BOP and FCI Fort Dix staff are working diligently to prevent such exposure from happening." Id. at *5. The court in United States v. Hernandez, Crim. No. 15-80077, 2020 WL 3451683 (S.D. Fla. June 24, 2020), denied a motion for compassionate release filed by an inmate who argued that he was at a higher risk of COVID-19 complications because he suffers from asthma, high blood pressure and Type 2 diabetes. Id. at *1-2. The Hernandez court explained that, while it was sympathetic to the defendant's health challenges and believed that the defendant "has legitimate concerns about the spread of COVID-19 at FCI Fort Dix," those concerns must be weighed against the fact "that FCI Fort Dix has had no confirmed case of an inmate contracting COVID-19 in its Low facility, and the BOP has implemented mitigation measures in accordance with its role to protect the inmates within its facilities." Id. at *2. In addition, the court in United States v. Pichardo, Crim. No. 17-512, 2020 WL 3819602 (S.D.N.Y. July 8, 2020), denied a motion for compassionate release filed by an inmate in the FCI Fort Dix Camp, who claimed that he faced a heightened risk of serious illness from COVID-19 due to high blood pressure. Id. at *2. The Pichardo Court denied the motion because no FCI Fort Dix Camp inmates had tested positive for COVID-19 since May 6, 2020, no staff members had tested positive since May 16, 2020, and all new inmates are quarantined for 14 days. Id.. The Pichardo Court concluded that "due to BOP's stringent measures, the low risk that

9

Defendant faces from contracting COVID-19 is not an extraordinary and compelling reason warranting compassionate release." Id.

We conclude that there is nothing in the record from which we can reach a determination that Moses's medical conditions and incarceration at FCI Fort Dix place him at an increased risk of a serious COVID-19 infection. We therefore cannot conclude that Moses's medical conditions and the current conditions at FCI Fort Dix constitute extraordinary and compelling reasons that warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).[6]

## IV.   CONCLUSION

For the foregoing reasons, we deny Moses's Emergency Motion Seeking Compassionate Release/Reduction in Sentence. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.

---

[6] The Government also opposes the instant Motion on the ground that Moses poses a danger to the community. (Gov't Resp. at 21-22.) Since we deny the Motion on another basis, we need not reach this additional argument.